(12/01/24) CCL 0520

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

CORRI MCFADDEN

v.

AMUNDSEN DAVIS LLC, MATTHEW HORN, RYAN JACOBSON, KIMBERLY HERRING, and CONSTANTINE GAVRILOS

No. _____

FILED
6/30/2026 1:20 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026L007708
Calendar, A
38803707

FILED DATE: 6/30/2026 1:20 PM   2026L007708

## CIVIL ACTION COVER SHEET - CASE INITIATION

A Civil Action Cover Sheet - Case Initiation shall be filed with the complaint in all civil actions. The information contained herein is for administrative purposes only and cannot be introduced into evidence. Please check the box in front of the appropriate case type which best characterizes your action. Only one (1) case type may be checked with this cover sheet.

Jury Demand  ■ Yes  ☐ No

**(FILE STAMP)**

### PERSONAL INJURY/WRONGFUL DEATH
CASE TYPES:
- ☐ 027  Motor Vehicle
- ☐ 040  Medical Malpractice
- ☐ 047  Asbestos
- ☐ 048  Dram Shop
- ☐ 049  Product Liability
- ☐ 051  Construction Injuries
  (including Structural Work Act, Road Construction Injuries Act and negligence)
- ☐ 052  Railroad/FELA
- ☐ 053  Pediatric Lead Exposure
- ☐ 061  Other Personal Injury/Wrongful Death
- ☐ 063  Intentional Tort
- ☐ 064  Miscellaneous Statutory Action
  (Please Specify Below**)
- ☐ 065  Premises Liability
- ☐ 078  Fen-phen/Redux Litigation
- ☐ 199  Silicone Implant

### TAX & MISCELLANEOUS REMEDIES
CASE TYPES:
- ☐ 007  Confessions of Judgment
- ☐ 008  Replevin
- ☐ 009  Tax
- ☐ 015  Condemnation
- ☐ 017  Detinue
- ☐ 029  Unemployment Compensation
- ☐ 031  Foreign Transcript
- ☐ 036  Administrative Review Action
- ☐ 085  Petition to Register Foreign Judgment
- ☐ 099  All Other Extraordinary Remedies

By: /s/ Daniel Lynch

(Attorney)                    (Pro Se)

### COMMERCIAL LITIGATION
CASE TYPES:
- ☐ 002  Breach of Contract
- ☐ 070  Professional Malpractice
  (other than legal or medical)
- ☐ 071  Fraud (other than legal or medical)
- ☐ 072  Consumer Fraud
- ☐ 073  Breach of Warranty
- ☐ 074  Statutory Action
  (Please specify below.**)
- ☐ 075  Other Commercial Litigation
  (Please specify below.**)
- ☐ 076  Retaliatory Discharge

### OTHER ACTIONS
CASE TYPES:
- ☐ 062  Property Damage
- ■ 066  Legal Malpractice
- ☐ 077  Libel/Slander
- ☐ 079  Petition for Qualified Orders
- ☐ 084  Petition to Issue Subpoena
- ☐ 100  Petition for Discovery

**  _____
   _____

Primary Email: docketing@lynchthompson.com

Secondary Email: dlynch@lynchthompson.com

Tertiary Email: akanarowski@lynchthompson.com

**Pro Se Only:** ☐ I have read and agree to the terms of the *Clerk's Oice Electronic Notice Policy* and choose to opt in to electronic notice form the **Clerk's Office** for this case at this email address: _____

**Mariyana T. Spyropoulos, Clerk of the Circuit Court of Cook County, Illinois**

Page 1 of 1

FILED DATE: 6/30/2026 1:20 PM   2026L007708

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

| | | |
|---|---|---|
| CORRI MCFADDEN | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| AMUNDSEN DAVIS LLC, MATTHEW HORN, | ) | |
| RYAN JACOBSON, KIMBERLY HERRING, | ) | JURY TRIAL DEMANDED |
| and CONSTANTINE GAVRILOS | ) | |
| Defendants. | ) | |

**COMPLAINT**

Plaintiff Corri McFadden by and through her attorneys, states as follows as its Complaint against Amundsen Davis, LLC ("Amundsen"), Matthew Horn, Ryan Jacobson, Kimberly Herring and Constantine Gavrilos (Defendants Horn, Jacobson, Herring and Gavrilos are referred to collectively herein as the "Individual Defendants").

**NATURE OF THE ACTION**

1. The Defendants in this matter undertook the representation of McFadden in connection with litigation styled *NHH LLC v. Centaur Construction Company, et. al.*, 19-cv-06332 (N.D. Ill – Judge Kennelly presiding)(the "Underlying Case").

2. The Defendants breached their duty of care to McFadden in several significant ways, including, but not limited to: failing to provide timely notice of, or obtain McFadden's consent to, potential and actual conflicts of interest arising from the Defendants' concurrent representation of McFadden and defendants, now judgment debtors in the Underlying Case; failing to properly investigate the factual issues related to the representation of McFadden; providing McFadden with inaccurate legal advice; and failing to keep McFadden reasonably informed about critical developments in the case.

1

3. These failures resulted in substantial damages to McFadden, including the entry of judgment against her for over $750,000 and subsequent legal fees that were necessitated to address the Defendants' substandard representation.

## PARTIES

4. Plaintiff Corri McFadden is a citizen of the state of Kansas.

5. Defendant Amundsen is a Limited Liability Corporation formed under the laws of Illinois with a principal place of business in Chicago, Illinois.

6. On information and belief, based on information on Amundsen's website and his registered address with the ARDC, Matthew Horn is a citizen of the state of Illinois.

7. On information and belief, based on information on Amundsen's website and his registered address with the ARDC, Ryan Jacobson is a citizen of the state of Illinois

8. On information and belief, based on information on Amundsen's website and her registered address with the ARDC, Kimberly Herring is a citizen of the state of Illinois.

9. On information and belief, based on information on Amundsen's website and his registered address with the ARDC, Constantine Gavrilos is a citizen of the state of Illinois.

## JURISDICTION AND VENUE

10. Defendant Amundsen is an Illinois LLC with a principal place of business in Illinois and the Individual Defendants are citizens of the state of Illinois. Defendants committed torts within Illinois. This Court therefore has jurisdiction over the Defendants pursuant to 735 ILCS 5/2-209(a)(1)(3); 735 ILCS 5/2-209(b)(2)(3)(4)

11. The relevant conduct alleged herein took place in Cook County. Venue is therefore properly before this Court pursuant to 735 ILCS 5/2-101.

2

## FACTUAL ALLEGATIONS

12. The Underlying Case commenced on September 23, 2019. The plaintiff in that matter, NHC LLC therein alleged that Centaur Construction Company, Inc. ("Centaur"), Peter Alexopoulos and Spiro Tsaparas were liable for breach of contract and fraud.

13. In October 2019, Defendants Horn and Herring, who at the time were employed by, agents of and/or members of Amundsen filed appearances on behalf of the defendants in the Underlying Case.

14. McFadden and Tsaparas are romantic partners. They are not married, but at all times relevant, the two have shared minor children and reside in the same household.

15. In approximately June 2020, NHC, the plaintiff in the Underlying Case, served a subpoena on McFadden. NHC's interest in McFadden appears to have stemmed from a loan made by Centaur Construction to EDrop-Off Chicago, LLC ("EDrop-Off"), an entity owned by McFadden which Amundsen later came to represent as well.

16. Amundsen represented McFadden in connection with that subpoena. Attorneys Herring and Horn worked with McFadden to gather responsive documents and reviewed those documents before producing them to NHC.

17. Thereafter, on or about January 22, 2021, NHC took McFadden's deposition. Amundsen attorney Herring represented McFadden at that deposition. To the best of McFadden's current recollection, her preparation for the deposition lasted only a few minutes.

18. McFadden was called as a witness at the trial in this matter in August 2022. Herring prepared McFadden for this testimony.

3

FILED DATE: 6/30/2026 1:20 PM   2026L007708

19. Despite representing McFadden in connection with her production of documents and appearance both at a deposition and at trial, there is no engagement letter reflecting the terms of Amundsen's representation of McFadden for those matters.

20. Similarly, Amundsen failed to advise McFadden of any potential ramifications to her personally that could arise from her testimony or production of documents, and did not disclose any current or potential conflicts of interest arising from its concurrent representation of McFadden and defendants in the Underlying Case. Nor did Amundsen advise McFadden that she should consider consulting with an independent attorney who could represent McFadden's interests free of any conflict.

21. On August 18, 2022, the jury in the Underlying Case returned a verdict of over $20 million against all three defendants jointly and severally, and judgment was entered on that verdict.

22. By May 2023, supplemental proceedings began in the Underlying Case, and NHC, now a judgment creditor served a third-party citation on McFadden. Herring filed an appearance on her behalf on July 10, 2023. Gavrilos later made filings and appeared on McFadden's behalf in the Underlying Case. On information and belief, based on the contents of emails sent by the Defendants, Horn and Jacobson were not only involved with, but were directing the legal work being performed by Amundsen on behalf of McFadden.

23. Despite Amundsen's formal appearance on behalf of McFadden, there is no engagement letter reflecting the terms of Amundsen's representation of McFadden.

24. Despite being aware of NHC's interest in the subject of the loan from Centaur to EDrop Off, and its position that the McFadden received funds from that loan and/or was liable for its repayment, Amundsen failed to advise McFadden of any potential ramifications to her personally that could arise the supplementary proceedings in the Underlying Case. Until it was too

late, McFadden was unaware of the possibility that NHC might successfully seek to recover assets from her because Amundsen attorneys failed to apprise her of that risk

25.     Likewise, Amundsen did not disclose any current or potential conflicts of interest arising from its concurrent representation of McFadden and the judgment debtors in the Underlying Case. Nor did Amundsen advise McFadden that she should consider consulting with an independent attorney who could represent McFadden's interest free of any conflict.

26.     Similarly, Amundsen failed to apprise McFadden that there were strategic reasons for her to seek counsel separate from judgment debtors.

27.     During supplementary proceedings in the Underlying Case, Amundsen failed to (a) provide competent and accurate legal advice, (b) failed to keep McFadden reasonably informed of the proceedings, and (c) failed to act diligently on her behalf.

28.     For example, the court denied the motion for extension of time for McFadden to appear for her citation examination, filed by Herring, due to improper filing of that motion.

29.     Amundsen failed to inform McFadden of its failure to properly file the motion or the court's order denying that motion.

30.     McFadden's citation examination went forward on November 27, 2023, with minimal preparation from Amundsen.

31.     McFadden was represented at that examination by Gavrilos. Gavrilos introduced himself to McFadden by email the morning of the examination and suggested in that e-mail that a prep call to begin thirty minutes before the scheduled start time would be sufficient.

32.     Meanwhile, NHC issued a citation to discover assets to EDrop-Off in November 2023 and served that citation via the Illinois Secretary of State.

5

33. At that time, Amundsen was aware of McFadden's connection to EDrop-Off and of NHC's interest in the loan from Centaur to EDrop-Off.

34. On information and belief, based on the contents of the docket in the Underlying Case, Amundsen was aware that this citation, but not inform McFadden of its existence.

35. As a result, EDrop-Off failed to timely respond to the citation, which allowed NHC to seek a conditional judgment against it (in which NHC expressly noted Amundsen's awareness of the citation and representation of McFadden) and also to portray McFadden and EDrop-Off as uncooperative and obstructionist, negatively impacting the court's perception of McFadden.

36. Amundsen later misreported the facts regarding the chain of events surrounding the issuance and service of the citation to EDrop-Off's to distance itself from the failure to keep McFadden apprised of relevant developments in the Underlying Litigation.

37. In February 2024, on information and belief based on the contents of emails sent by Amundsen attorneys, Horn and Jacobson directed that all work by Amundsen attorneys on the matters related to the Underlying Case cease due to an outstanding balance.

38. Despite actively representing McFadden at that time, Amundsen did not inform her that work related to her representation would cease or slow due to payment issues.

39. Also in February 2024, NHC filed a motion seeking a turnover of funds from McFadden and EDrop-Off related to loans NHC argued were made by Centaur Construction and/or Tsaparas to McFadden and/or EDrop-Off (the "Turnover Motion").

40. Amundsen had failed to adequately investigate the nature of these loans before taking on its representation of McFadden or prior to her production of documents or deposition/trial testimony resulting in an unclear record as to: who (McFadden or EDrop-Off) was the obligor; who (Centaur or Tsaparas) was the obligee and the amounts due.

6

41. Specifically, both McFadden and Tsaparas contend that the loans at issue were made by Centaur to EDrop-Off. Additionally, E-Drop-Off repaid approximately $120,000 of the outstanding balance in February 2019, many years before NHC filed the Turnover Motion.

42. After the Turnover Motion was filed, Amundsen sought information regarding the transactions, but this tardy investigation occurred after McFadden had already provided testimony without adequate preparation or advice. As a result of Amundsen's conflicted and inadequate representation of McFadden and E-DropOff, the record regarding these issues as not clear and NHC capitalized on the lack of clarity to argue that McFadden should be held personally liable for the entire amount (without crediting the re-payment).

43. In the response filed on behalf of McFadden to the Turnover Motion, Amundsen failed to request an evidentiary hearing, and did not include evidentiary support for her defenses such as a declaration from either McFadden or Tsaparas regarding the entity of the oblige or the repayment details, or other documents supporting her position. NHC specifically noted this failure in its response.

44. On April 12, 2024, after filing a response to the Turnover Order on her behalf, Amundsen, for the first time in the course of its representation of her, informed McFadden in writing of a potential conflict of interest, but did not adequately explain the implications of the conflict to her.

45. Notably, as of April 12, 2024, NHC was actively seeking a turnover of assets from McFadden/E-Drop Off, which if granted would result in the application of the value of those assets to reduce the obligations of Amundsen's other clients: the judgment debtors in the Underlying Litigation.

46. Yet, the April 12 2024 communication to McFadden indicated that Amundsen had "determined that, at this juncture, no actual conflict exists."

47. McFadden did not execute the conflict waiver.

48. Amundsen never obtained informed consent from McFadden to the potentially conflicted representation in April 2024 or at any other time.

49. On April 24, 2024, the court entered an order granting the turnover motion. That order did not provide any monetary relief against McFadden or EDrop-Off and directed that the parties meet and confer on the outstanding issues necessary to close out the motion.

50. Amundsen failed to timely inform McFadden of either the obviously adverse ruling against her, or that the court's order unquestionably created a direct conflict between McFadden and the judgment debtors in the Underlying Litigation.

51. After additional motion practice regarding the relief sought by the Turnover Motion, on July 15, 2024, the court entered an order directing McFadden personally to turn over $751,058.07 to NHC, and judgment was entered in that amount against McFadden on July 22, 2024 (the "McFadden Judgment").

52. The amount of the McFadden Judgment does not credit the 2019 repayment of approximately $120,000. Notwithstanding the lack of any finding of alter ego, or piercing EDrop-Off's corporate veil, the McFadden Judgment makes her individually liable for funds transferred to EDrop-Off and not to her personally.

53. Amundsen did not timely inform McFadden of either the July 15, 2024 order or the McFadden Judgment.

54. Amundsen filed a motion to reconsider the ruling on the Motion for Turnover Order, signed by Gavrilos. That motion inaccurately represented that McFadden had requested an

8

FILED DATE: 6/30/2026 1:20 PM   2026L007708

evidentiary hearing in her response to the motion for turnover. The misstatement allowed NHC to characterize McFadden as a liar: characterizing the representation as "flatly untrue."

55.    Amundsen did not timely inform McFadden of the filing of the motion to reconsider or the subsequent order denying that motion.

56.    McFadden was unaware of the judgment against her until NHC served her with a first party citation based on that judgment on August 29, 2024.

57.    By August 29, 2024, when McFadden learned of the July 22, 2024 judgment, the thirty-day period afforded under Federal Rule of Appellate Procedure 4 for her to appeal that judgment had expired.

58.    Thereafter, Amundsen provided inaccurate advice about McFadden's appellate rights, including that she was not permitted to appeal the judgment against her until the conclusion of all supplemental pleadings against the judgment debtors.

59.    On October 17 2024, Amundsen, in an email sent by Defendant Horn, advised McFadden to pay the judgment against her.

60.    That same day, Gavrilos contacted counsel to NHC requesting wiring instructions for payment of the judgment but did not ask for a payoff number or confirmation of the amount due.

61.    On October 23, 2024, Gavrilos communicated to McFadden that the amount needed to satisfy the judgment was $760,358.43 but did not confirm that calculation with NHC's counsel. Nor did Gavrilos, or any other Amundsen attorney advise McFadden that any delay in payment could result in additional interest accruing, despite being expressly advised first that no payment would be made until October 24 and thereafter being told that payment of the full amount would be delayed by several days.

9

FILED DATE: 6/30/2026 1:20 PM   2026L007708

62. McFadden paid the $760,358.43 identified by Gavirlos in full. Despite being aware of that payment, Amundsen never requested that NHC provide a satisfaction and release of the judgment against McFadden in exchange for her payment.

63. Ultimately, NHC would take the position that McFadden's payments were insufficient to satisfy the judgment, and that a balance of approximately $500 remained. NHC used that failure in attempt to force McFadden to respond to the first party citation to discover assets served on her in connection with the McFadden Judgment.

64. McFadden was required to obtain replacement counsel to address the outstanding balance on the McFadden Judgment and to take steps to remediate the impact of Amundsen's conflicted and negligent representation of her in the Underlying Litigation.

65. As a direct result of McFadden incurred damages exceeding $800,000 including the judgment entered against her and unnecessary legal fees.

## CLAIMS FOR RELIEF
### (*Professional Negligence Against All Defendants*)

66. As and for its Paragraph 66, McFadden adopts and incorporates Paragraphs 1 through 65 above as if fully restated herein.

67. At all times relevant, an attorney-client relationship existed between Defendants and McFadden. Defendants represented McFadden in connection with both the pre-trial subpoena to her in the Underlying Litigation and her trial testimony. Amundsen attorneys filed appearances on her behalf in the supplemental proceedings in the Underlying Litigation, represented her in connection with those proceedings until replacement counsel appeared in January 2025.

68. Defendants breached their duty to McFadden by failing to: (a) disclose potential and actual conflicts of interest, (b) obtain McFadden's informed consent to potential and actual conflicts of interest, (c) provide competent legal advice to McFadden, (c) keep McFadden

10

informed of the status of the Underlying Litigation, including after filing appearances on her behalf and (e) timely inform McFadden of adverse rulings against her, including the McFadden Judgment.

69. Defendants' breach of duty proximately caused harm to McFadden. As a result of Defendants' breach, McFadden suffered a judgment against her to which she had valid defenses (including a lack of personal liability and repayment), lost appellate rights regarding that judgment, and was required to pay fees to replacement counsel to address Defendants' substandard performance.

70. McFadden's monetary damages resulting from Defendants' actions exceed $800,000.

**WHEREFORE**, McFadden prays for (1) compensatory damages for the financial losses suffered by Defendants in an amount to be established at trial, which McFadden believes exceed $800,000; (2) prejudgment interest on the damages from the date of loss to the date of judgment to the extent available; and (3) such other relief as the Court deems just and proper.

PLAINTIFF DEMANDS A JURY TRIAL ON ALL COUNTS SO TRIABLE

Dated: June 30, 2026

Daniel Lynch
Amy J. Kanarowski
LYNCH THOMPSON LLP (60040)
150 S. Wacker Dr., Ste 2550
Chicago, Illinois 60606
(312) 346-1600
dlynch@lynchthompson.com
akanarowski@lynchthompson.com
docketing@lynchthompson.com

Respectfully submitted,

Corri McFadden

/s/ *Daniel Lynch*
*One of her Attorneys*

11